Halley H. ERICKSON, Plaintiff-Appellant,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 14734.

United States Court of Appeals Sixth Circuit.

July 13, 1962.

Earl E. Leming, Knoxville, Tenn., for appellant.

J. H. Reddy, U. S. Atty., Knoxville, Tenn., Carl H. Harper, Regional Atty., Dept. of Health, Education, and Welfare, Atlanta, Ga., for appellee.

Before MILLER, Chief Judge, CECIL, Circuit Judge, and BOYD, District Judge.

CECIL, Circuit Judge.

Halley H. Erickson, plaintiff-appellant herein, sometimes called claimant, filed an action in the United States District Court for the Eastern District of Tennessee, Northern Division, on July 2, 1959, pursuant to Section 405(g), Title 42 U.S.C.A. (Social Security Act), to review the final decision of the Appeals Council of July 11, 1960. This is in effect the decision of the Secretary of Health, Education and Welfare.

The history of this action is as follows: On January 11, 1955, the appellant filed an application to establish a period of disability, alleging that he first became unable to engage in substantial gainful activity on May 31, 1950. This claim was denied on December 4, 1956, by the Bureau of Old-Age and Survivors Insurance, Social Security Administration, Department of Health, Education and Welfare. The appellant requested reconsideration on January 22, 1957, and on February 19th the Bureau affirmed its initial decision. A request for a hearing before a referee was then filed on June 12, 1957. An application for disability insurance benefits was filed on December 3, 1957, and disallowed by the Bureau August 21, 1958. On September 22, 1958, the referee found that the appellant had been suffering from a combination of physical and mental impairments since May 31, 1950, of such severity as to preclude any substantial gainful activity and that he was entitled to the establishment of a period of disability and to disability insurance benefits.

The Appeals Council took jurisdiction of the case on its own motion and on May 6, 1959, reversed the decision of the referee. (Section 405(b), Title 42, U.S.C.A.) The action was then filed in the District Court, but on motion on behalf of the Secretary, it was remanded for further administrative action by the Secretary of Health, Education and Welfare. (Section 405(g), Title 42, U.S.

C.A.) The council reaffirmed its original decision and on July 20, 1960, the District Judge sustained the motion on behalf of the Secretary for summary judgment. This appeal followed.

The appellant's claim stems from an injury he received in a mine accident on May 31, 1950. A piece of slate weighing approximately 800 pounds fell on him, which struck him in the head and knocked him to his knees. He was pinned beneath this slate and when released was taken to the East Tennessee Baptist Hospital. An x-ray examination showed a "severe fracture through the ramus of the pubis and ischium on process of the 5th lumbar vertebra on the right side." There was no evidence of a ruptured bladder and no paralysis of either lower extremity. The hospital report gave the diagnosis, "Fracture of the Pelvis."

■ The appellant had the required quarters of coverage to qualify for this action and last met the earnings' requirements under the 1954 and 1956 amendments to the Social Security Act in the quarter ending March 31, 1952. (Section 414, Title 42 U.S.C.A.) The sole question is whether from May 31, 1950, or from some other date on or prior to March 31, 1952, continuously to December 3, 1957, he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment or impairments which could be expected to result in death or to be of long-continued and indefinite duration. The burden is on the appellant to prove his disability. (Sections 416(i), 423(c) (2), Title 42 U.S.C.A.)

The appellant was born on April 9, 1898, and at the time of his accident was 52 years of age. He had a seventh or eighth grade education and most of his industrial experience had been as a coal loader. He had also had some little experience with farming and work on the public roads.

The claimant was in the East Tennessee Baptist Hospital until August 5, 1950, when he was discharged as having progressed fairly satisfactorily. He was seen by Dr. Willien, the orthopedic surgeon in charge of his case, on September 22nd, November 3rd and December 1st, with continued complaints. He was readmitted to the Baptist Hospital and was there from January 3rd to January 7, 1951, and a myelogram was done by Dr. Ivey, a neuro-surgeon. This did not reveal evidence of a ruptured disc and surgery was not recommended. Having reached the maximum benefit from treatment, in the opinion of Dr. Willien, he discharged him on February 23, 1951, with an estimate that his permanent partial disability amounted to fifty percent.

Mr. Erickson was admitted to the Acuff Rehabilitation Center, in Knoxville, on June 5, 1952, and remained there for treatment almost continuously until the latter part of August of that year. Here he was examined by physicians in various fields of medicine and given treatment. He was given a Camp garment to support his back and when it became apparent that he had received maximum benefit from his course of treatment he was discharged. He was given instructions to continue exercises and to wear his Camp garment. It was estimated by Dr. Lehman of the clinic that he had twenty percent disability.

From the report of an x-ray made in Chattanooga, on May 1, 1951, a diagnosis was given as follows: "1. Degeneration, intervertebral disc between 5th lumbar vertebra and 1st sacral vertebra with first degree anterior displacement 5th lumbar vertebra in relation to sacrum. 2. Arthritis Chronic hypertrophic mild, involving spine and hips. 3. Fractures, left transverse processes, 3rd and 4th lumbar vertebrae and superior ramus left pubis, well healed. 4. Vague neurological signs in lower extremities probably caused by protrusion of lumbosacral intervertebral disc."

In a report dated December 15, 1958, Dr. Willien indicated that the claimant was still suffering from the same complaints he had prior to March 31, 1952. He described them as follows: "At the present time the patient continues to have the same pain and numbness over

the first sacral nerve root in his right lower extremity. He has difficulty voiding and he continues to have a derangement of the emptying mechanism of his bladder in that when he attempts to void this is accompanied by some relaxation of the anal sphincter and his clothes are usually stained with a small amount of feces. The patient advises further that he has never been able to return to a gainful occupation since the time of his injury."

The appellant has never worked at any gainful activity since his accident and has continuously suffered pain to an extent that he says he is unable to work. It appears from the record that he has been willing to work and has been eager to engage in some form of useful and remunerative work.

At the Acuff Clinic, the appellant was given a psychometric examination on July 16, 1952. This indicated that he had aptitudes toward occupations in which he himself suggested an interest, such as material handler, stock clerk, watchman, guard etc. There is no evidence that he was able to perform them or that any such jobs were available to him.

Dr. Lehman of the clinic thought that he could do light farming or light mining, or undertake some business of his own. Light mining is not defined nor does it appear that mining is light work. The appellant himself said that his daily activities were cutting wood, gardening, doing chores around home, milking cow and tending chickens. It appears that this work was done on his own place, that he did it when he was able and that he had to get on his knees to chop kindling.

Dr. Turney who saw the claimant on February 6, 1952, and reviewed his medical record, recommended that efforts be made to obtain for him light work not requiring undue stress or strain on his back or prolonged stooping.

It is quite obvious that this man had considerable disability, as of March 31, 1952. We cannot tell from the findings and conclusions of the Appeals Council to what extent it concluded that he was not precluded from all types of substantial gainful activity or what job opportunities were available to one in his physical condition.

This Court has held that in order to support the administrative determination of the Secretary, in finding adversely to the claimant, there must be substantial evidence of what kind of work he is able to do and what employment opportunities are available for a man who can do only what claimant can do. Roberson v. Ribicoff, 299 F.2d 761, 763, C.A. 6; Hall v. Flemming, 289 F.2d 290, C.A. 6; King v. Flemming, 289 F.2d 808, C.A. 6. See also Kerner v. Flemming, 283 F.2d 916, C.A. 2; Butler v. Flemming, 288 F.2d 591, C.A. 5.

The Council's decision in this case does not meet this requirement.

The summary judgment of the District Court is reversed and the cause remanded to that court for judgment directing the Social Security Administration to conduct further proceedings in conformity with this opinion.