**Montward JUSTICE, Plaintiff-Appellee,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellant.**

**No. 16353.**

United States Court of Appeals
Sixth Circuit.

May 27, 1966.

Robert C. McDiarmid, Dept. of Justice, Washington, D. C., for appellant, John

W. Douglas, Asst. Atty. Gen., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., on the brief.

Ronald W. May, Pikeville, Ky., for appellee.

Before WEICK, Chief Judge, and O'SULLIVAN and PHILLIPS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

The Secretary of Health, Education and Welfare appeals from a District Court judgment awarding benefits under the social security laws of the United States to appellee, Montward Justice. The Secretary's examiner found, after a hearing, that the said Justice was not, at the time of and following his application for social security benefits, made on August 13, 1962, disabled within the meaning of Section 216(i) (1) (A), 42 U.S.C.A. § 416(i) (1) (A). The plaintiff was thirty-six years old at the time of his application.

Appellee Justice requested a review of the findings of the Secretary's trial examiner. This was denied and the decision of the examiner became that of the Secretary. Justice then commenced an action in the United States District Court for the Eastern District of Kentucky under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). Upon hearing, the District Judge reversed the decision of the Secretary and remanded the cause for the awarding of social security benefits to plaintiff.

The United States District Judge filed an opinion following a regular form currently in use in the mentioned District Court. This opinion assumed that plaintiff's proofs made out a case that the said Justice was disabled from doing the work which he had been doing prior to his application for social security benefits, to wit, coal mining. From this holding, the District Judge, citing cases from this court, held that the plaintiff should prevail because the Secretary had not shown that work which plaintiff could do in substitution for his regular employment was available. Hall v. Flemming, 289 F.2d 290 (CA 6, 1961); King v. Flemming, 289 F.2d 808 (CA 6, 1961); Prewitt v. Celebrezze, 330 F.2d 93 (CA 6, 1964); and Thompson v. Celebrezze, 334 F.2d 412 (CA 6, 1964).

We reverse the District Judge because we are satisfied that the examiner's findings in this case were not erroneous and that the plaintiff failed to make out a case that he was disabled within the meaning of the applicable statute. Under this statute, the term disability is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." [1] 42 U.S.C.A. § 416(i) (1) (A).

Upon plaintiff's request for social security benefits, his application, pursuant to Section 221 of the Social Security Act, 42 U.S.C.A. § 421, was referred to the Kentucky Bureau of Rehabilitation Services. On November 15, 1962, that Bureau issued a report, signed by a physician and a disability examiner, stating that plaintiff's disability was an ulcer, controllable by diet. This report contained the medical examiner's observations that,

> "Patient appeared to to be in excellent physical condition. * * * clinical findings indicate that the applicant has an ulcer. He also complains of his back hurting. There was no evidence of any appreciable orthopedic impairment. He moves all of his joints without restriction, although he may have some pain. With careful diet and medication the applicant should be able to keep his ulcer under control, at least to the extent that he would not be prevented from doing some gainful work because of it."

---

1. Amended to read, "* * * can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." P.L. 89–97 § 303(a) (1), July 30, 1965.

This finding was accepted by the Social Security Administration, but plaintiff filed a request for reconsideration, alleging in substance that he had "pain in stomach and back, head injury, choking and pain in chest, arthritis in his legs, back, arm, and 'aflelic' foot (athlete's foot?)." He claimed he could not see and had defective ear drums. A second examination was performed by another doctor on or about December 27, 1962, and again Justice was found "not to be under a disability." The report of this examination contained the observation that "applicant was well developed, well nourished, muscular and appeared to be in excellent physical condition."

A further report upon applicant Justice's request for reconsideration was made on March 25, 1963, in the form of a letter to Justice from the Chief of the Reconsideration Branch. This contained the following:

"After receipt of your request for reconsideration we had your claim independently reviewed by a specially designated group to see whether the previous denial of your application was correct. After thoroughly reviewing the record in your case, including the additional medical evidence, and considering your statements, age, education, training and experience, we find that the previous determination is proper under the law. The denial of your application for disability insurance benefits therefore remains unchanged.

"You state you are unable to work because of several conditions including arthritis, ulcers, and the after effects of a head injury. However, the medical evidence, which includes a special examination, does not show that you have a significant arthritic condition which limits your ability to walk, lift, bend, or carry to the extent you are unable to work. Although you may have been given hospital treatment in the past and continue to have stomach discomfort, special x-ray studies of your stomach shows that you digest food properly. *You are well nourished with no signs of physical weakness or other complications of a disabling stomach condition.* In respect to your head injury, a medical report of your hospital treatment shows you suffered a skin laceration, but skull x-rays disclosed no skull fracture. You required only one day of treatment and you were discharged as being in an improved condition with a well healing wound. Perhaps you have headaches, but there is no medical evidence that these are frequent, severe, or due to a serious physical disorder. *No other significant physical disorder of your eyes, hearing or other part of your body is shown.*

"The evidence shows that you are about 36 years of age. Although you may have done only coal mining work,[2] *the evidence does not establish that your health prevents you from doing some type of work inside or outside of the mines in keeping with your previous experience.*" (Emphasis supplied)

Following the above report and at Justice's request, a hearing was had before a trial examiner at which Justice testified. Before the examiner were two medical reports, one by applicant's own doctor, Dr. M. D. Flanery, who under date of May 2, 1962, executed a medical report that as of that date Justice was "Totally disabled—is on a restricted diet and treatment." The only medical finding which would be supportive of such total disability was that the patient had a gastric ulcer. The report had the notation "advise surgery." This meager report contained no other discussion of Justice's physical condition or the causes of his total disability. The other medical report was from Dr. Francis H. Hodges who examined Justice on October

---

2. There was evidence that Justice had worked as a cook in the army and in addition to work in coal mines, had worked as a carpenter's helper and for a short period as a plumber's helper.

23, 1962. This report excluded all physical disabilities other than a stomach ulcer. It contained the observation that "The patient is a well developed, well nourished, muscular, small white male. He appears to be in excellent physical condition." The concluding paragraph of the report reads,

"This man has generalized abdominal tenderness and symptoms which are suspiciously indicative of all types of abdominal discomfort. His hands and his muscular development show that this man can and has worked. He has an ulcer and there is no obstruction. He has proper medicine and whether or not he takes proper care of himself in every respect with rather optimal medical supervision I am unable to say. I feel that he does have chronic ulcer disease and there will probably be recurrence from time to time. This unquestionably is an impairment, but literally thousands of men work daily under such circumstances and they perform creditably in many businesses and professions."

It would have been a permissible inference for the hearing examiner to read Doctor Hodges' last sentence with the phrase "under such circumstances," not as a gratuitous opinion as to the general effect of ulcers, but rather as a medical evaluation of the severity of plaintiff's admitted ulcer.

The record also discloses that Justice was given a medical discharge from the army because of his ulcer and was later, in 1953, treated in a Veterans Hospital for recurrence of such condition. Such hospital report, under the heading of Physical Examination, contained the following:

"Revealed a well developed, well nourished, white male, aged 27, in no acute distress. Physical examination completely normal save for the presence of mild epigastric tenderness to deep palpation."

The report concluded,

"COURSE IN HOSPITAL: On admission patient placed on bland, convalescent type ulcer diet. Was given milk and amphojel between meals and probanthine 15 mg. q. 6 hours. On this regime, patient improved rapidly and has been asymptomatic for the past 3 days prior to discharge. This patient has not been followed by any M.D. and has been receiving no medication whatsoever for his chronic duodenal ulcer, and it is felt that patient certainly should receive outpatient treatment with some form of intelligent therapy for his stomach.

"FINAL DIAGNOSIS. 1. Chronic duodenal ulcer, active. Treated-Improved.

"PRESENT STATUS QF SERVICE CONNECTED DISABILITY: Treated improved."

In 1959 Justice was hospitalized for one day as a result of an automobile accident. He was discharged after his lacerations and contusions were cared for and an x-ray of his skull had proved negative. The applicant, however, complained of many difficulties and at the time of the hearing contended that he was not able to work. He stated that when he adhered to the diet and used the medicines prescribed for his ulcer, he got relief but admitted that he did not always do so, assigning various reasons including a claim that he could not afford to purchase the required dietary foods. Notwithstanding the applicant's own complaints and the one doctor's opinion that Justice' ulcer was totally disabling, our own review of the record persuades us that the examiner's conclusion that in total the applicant's disability was a stomach ulcer, controllable by diet and proper medication, was supported by substantial evidence, as was also his decision that plaintiff was not disabled within the meaning of the applicable statute.

While such a finding could be inferred, the examiner did not, with desirable clarity, announce a finding that plaintiff was not disabled from resuming the work of coal mining. The examiner's report contains the following, relevant

**1002**

primarily to plaintiff's education and training:

"We have noted his age and his letters (Exhibits Nos. 4 and 11) which reveal a developed ability to read and write that is considerably in advance of the educational plane indicated by his testified amount of school experience. We had the opportunity to observe and talk with this claimant at the hearing. This is not to say claimant could be considered to be highly educated or trained, but he did not exhibit physical symptoms of such discomfort which would, per se, preclude him from light physical activity. The sort of activity engaged in daily by grocery clerks, cashiers, janitors, and many others, *ad infinitum*, where nominal ability to read and write and move about are all that is reasonably required does not, from the evidence, seem totally barred to this claimant."

Plaintiff insists that the foregoing was a finding that he is disabled from mining and that under the rule of our decisions,[3] the burden was on the Secretary to prove that there was other employment available to Justice in the area of his home. Our relevant decisions have been made in the factual contexts of each case and we did not announce a mechanical rule which would relieve each applicant from his initial burden of proving disability. It is not the burden of the Secretary to make an initial showing of non-disability. Erickson v. Ribicoff, 305 F.2d 638, 640 (CA 6, 1962); Cyrus v. Celebrezze, 341 F.2d 192, 195 (CA 4, 1965). The plaintiff before us is not a past middle age coal miner with serious physical disabilities, who can work only if some sedentary and specialized type of employment can be found for him. We do not think that in this case the burden was on the Secretary to precisely point

to a job available to this 36 year old man in "generally excellent physical condition" whose only ailment is an ulcer which was shown to respond favorably to dietary and medical control.

The judgment of the District Court is reversed with direction to dismiss the complaint.

---

**3.** Hall v. Flemming, 289 F.2d 290 (CA 6, 1961); King v. Flemming, 289 F.2d 808 (CA 6, 1961); Prewitt v. Celebrezze, 330 F.2d 93 (C.A. 6, 1964); Thompson v. Celebrezze, 334 F.2d 412 (CA 6, 1964); Rice v. Celebrezze, 315 F.2d 7 (CA 6, 1963); Ratliff v. Celebrezze, 338 F.2d 978 (CA 6, 1964); Erickson v. Ribicoff,

305 F.2d 638 (CA 6, 1962); Massey v. Celebrezze, 345 F.2d 146 (CA 6, 1965); Jarvis v. Ribicoff, 312 F.2d 707 (CA 6, 1963); Hall v. Celebrezze, 314 F.2d 686 (CA 6, 1963); Jones v. Celebrezze, 321 F.2d 192 (CA 6, 1963); Roberson v. Ribicoff, 299 F.2d 761 (CA 6, 1962).