Oshel W. SKEENS, Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Appellee.

No. 11068.

United States Court of Appeals
Fourth Circuit.

Argued April 5, 1967.

Decided May 12, 1967.

Franklin W. Kern, Charleston, W. Va., for appellant.

Charles M. Love, III, Asst. U. S. Atty. (Milton J. Ferguson, U. S. Atty., and W. Warren Upton, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and WINTER, Circuit Judges.

WINTER, Circuit Judge:

In a suit to reverse the Secretary's denial of the claim of Skeens for a determination of a period of disability under 42 U.S.C.A. § 416(i) and for disability benefits under 42 U.S.C.A. § 423, the district court granted summary judgment for the Secretary, concluding that the Secretary's findings were supported by substantial evidence. This appeal ensued. Viewing the proof in the relevant categories discussed in Lackey v. Celebrezze, 349 F.2d 76 (4 Cir. 1965); Thomas v. Celebrezze, 331 F.2d 541 (4 Cir. 1963); and Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1962), we are satisfied that the Secretary's findings are not supported by substantial evidence, and we reverse.

Indisputably, claimant is suffering from generalized bilateral emphysema. The only question is its effect on his ability to engage in any gainful employment.

The Secretary found, as a result of an initial hearing and a supplemental hearing ordered by the Appeals Council, that claimant suffered "mild pulmonary fibrosis, *generalized pulmonary emphysema, bilateral,* and varicosities of the right leg." (emphasis supplied) As a result the Secretary further found that claimant suffered from shortness of breath which restricted his activities to "light work where not too much walking is required." Although these impairments were found not to be remediable, they were also found not disabling under the Social Security Act, as amended. In connection with the latter finding, the Secretary found numerous gainful activities of a sedentary nature, within claimant's residual capacity to perform, such as scrap sawyer, bag filler, bag sealer and filling machine operator in the dairy industry, coil assembler, buffer, polisher and solderer in a souvenir plant, horse farm worker on a horse farm, lock packer in a hardware plant, and baker's helper in a bakery, to exist in the area surrounding Charleston, West Virginia (claimant's home) and New Haven, Connecticut (the locale where claimant had previously worked).

The medical testimony concerning claimant was from three physicians—Dr. W. V. Wilkerson, who treated claimant since May, 1964 in his home community of West Virginia, Dr. M. L. Riccitelli, who treated claimant in New Haven, Connecticut, and Dr. J. M. Daniel, who examined claimant for the purpose of evaluation and giving evidence in the proceeding. Dr. Wilkerson, a specialist in internal medicine, diagnosed pulmonary emphysema and other illnesses, and concluded claimant was unfit for gainful employment. Dr. Riccitelli, a general practitioner with a sub-specialty in internal medicine, diagnosed claimant as suffering from emphysema with pulmo-

nary fibrosis and frequent asthmatic attacks. He concluded that claimant was completely disabled from work. Dr. Daniel diagnosed chronic bronchitis, with mild functional impairment, pulmonary emphysema without evidence of functional impairment, and other ills, but concluded that there was "no sufficient evidence of organic disease process to interfere with [claimant's] engaging in the usual activities of a 54-year-old male." At the supplemental hearing, evidence was also produced to show that in an eleven-month period a comparative x-ray study revealed an increase from "minimal to mild generalized interstitial fibrosis," although the radiologist characterized this as "no significant change." Thus, the only support for the Secretary's finding that claimant was not disabled was the testimony of Dr. Daniel.

In this case there is no substantial conflict in the objective medical facts, and were this a case solely of a conflict in expert medical opinion about the conclusions to be drawn from the objective medical facts, the Secretary's determination of which expert to believe would be unassailable, Gotshaw v. Ribicoff, 307 F.2d 840 (4 Cir. 1962). But the subjective evidence of pain and disability and claimant's work history are so clear and convincing that the expert medical opinion of Dr. Daniel, controverted as it is by Drs. Wilkerson and Riccitelli, is insubstantial, standing alone, to support the Secretary's finding. A brief recitation of the evidence will demonstrate this conclusion.

Claimant alleged he became disabled at the age of 53. He left school at 14 or 15, having completed the fifth grade, and worked variously for a lumber company, then in a coal mine, laying track and doing general manual labor, then in a sawmill from 1941 to 1946, and then "off and on in coal mines up 'til '58." When the mines finally closed in 1959, claimant took his family to New Haven, Connecticut, where he found a job as a guard and watchman in a wholesale hardware company. His duties required him to patrol the building and to punch a time clock at intervals as he walked six, eleven or thirteen miles, depending upon his assigned area and shift. In March, 1964 his wife and young children returned to West Virginia, but claimant remained in New Haven, living with a married son, at his employment and near his mother, who was too sick to return to West Virginia. In May, 1964 claimant returned to West Virginia for his mother's funeral where, on May 12, he collapsed, was confined to home and was later hospitalized in the Beckley Hospital. It was at the Beckley Hospital that the first diagnosis of bilateral pulmonary emphysema was made.

Claimant returned to New Haven on or about July 15, 1964, in spite of the fact that Dr. Wilkerson refused to give him a full release and advised him that he would not be able to resume his previous duties. Nonetheless, at claimant's urging, Dr. Wilkerson gave claimant a doctor's slip for "trial" at work.

Claimant lasted at his old job four weeks and then, complaining of tiredness and shortness of breath, he consulted Dr. Riccitelli, who reported to claimant's employer that claimant had emphysema with pulmonary fibrosis and frequent asthma attacks, and that "he is completely disabled from work." The employer put claimant on sick leave and claimant returned to West Virginia.

Upon his return, claimant made no further attempts to work, nor did he apply for rehabilitation training. He has remained at home and he has walked as little as possible, partly because of shortness of breath and partly because of varicose veins. He returned to the care of Dr. Wilkerson, who found that claimant's condition was getting progressively worse, and that claimant was unfit for gainful employment.

Thus, this case does not present the picture of a claimant residing in a depressed economic area who has lost hope of attractive employment and who exaggerates minimal disabilities to achieve a steady source of income for alleged disability. When claimant's usual em-

ployment opportunities as a miner terminated in 1959 because of the closing of the mine, he displayed the initiative of moving his entire family to another community where he could obtain gainful employment. It is uncontroverted that he remained in that community, even though his family returned to West Virginia, although, incidentally, his mother was too ill to make the return. The trial examiner strongly suggested that claimant did not return to West Virginia with his family because of his mother, but claimant's denial is uncontroverted and any such motive for remaining is belied by his return after his mother's death. When his illness became acute in the period immediately following his mother's funeral in West Virginia, he, nevertheless, made a substantial effort, against the advice of his medical adviser, to return to New Haven to work. Only after the resumption of work failed and Dr. Riccitelli told his employer that claimant was completely disabled from work, did claimant abandon further efforts to engage in gainful activity.

As against these facts, it avails the Secretary nothing to attack the conclusions of Drs. Wilkerson and Riccitelli on the ground that their reports do not disclose that they employed all of the elaborate diagnostic techniques used by Dr. Daniel. Dr. Wilkerson is a graduate of The Johns Hopkins University School of Medicine and Dr. Riccitelli is a graduate of and professor at the Yale University School of Medicine. That their medical techniques were deficient is not to be presumed lightly irrespective of the completeness of their reports. Their conclusions are completely supported by what actually transpired, and the record is permeated with claimant's good faith. The only substantial evidence points unerringly to the conclusion that claimant is, and was since on or about May 12, 1964, unable to engage in any substantial gainful activity by reason of a medically determinable physical impairment which can be expected to last for a continuous period of not less than twelve months.

Reversed.