Allen ROSE, Plaintiff,

v.

Robert FINCH, Secretary of Health, Education & Welfare (Now Elliott Richardson), Defendant.

Civ. A. No. 69-C-41-A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Oct. 12, 1970.

Robert T. Winston, Jr., Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S., Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, District Judge.

The claimant, Allen Rose, on March 7, 1968, applied for a period of disability commencing August 8, 1967, and for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. § 416(i) and § 423 (Supp.1969). His application was denied on February 20, 1969, by the Secretary of Health, Education and Welfare, who found that the claimant had not been under a disability as defined by 42 U.S.C. § 423(d) at any time prior to the date of the decision. This decision became final on March 17, 1969, when it was affirmed by the Appeals Council. Aggrieved, claimant requests this court to review and reverse the decision of the Secretary under § 205(g) of the Act, 42 U.S.C. § 405(g), which section provides that a federal district court may set aside the findings of the Secretary only if they are not supported by substantial evidence. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). For reasons which follow, the court finds that the decision of the Secretary is supported by substantial evidence, and hence, it is affirmed.

Claimant is forty-five years old and lives with his wife and three of his four children in Clintwood, Virginia. He has a seventh-grade education and has had experience working as a truck driver, but, by far, the majority of his work experience has been in the coal mines, where he spent twenty years working as a coal loader and as a motor man.

Claimant alleges that he became disabled in August, 1967, because of his ulcer, low back pain, sciatica, emphysema, and nervous spells. He testified that while he had suffered for many years with his ulcer and back pain, these impairments finally became so severe that he had to be hospitalized. The ulcer responded in some measure to a prescribed diet and to medication, but the back pain continued and made it impossible for him to return to work. At present, claimant alleges that he cannot do anything which requires bending, stooping, sitting, standing, or lifting, and that his emphysema is also a constant problem in that the slightest exertion causes him to become short of breath. Claimant did testify, however, that he could walk for perhaps half a mile if he took his time.

Claimant's wife corroborated all that he said, stating that he had been a steady worker and a good provider before the onset of his disability. She testified that claimant had been in poor health for several years because of his back pain, breathing difficulty, and ulcer. Based on her day-to-day observation of claimant, she felt that he was disabled.

The Hearing Examiner, although conceding that claimant's ailments would preclude his engaging in heavy labor in the mines, nevertheless found certain types of light work to be within claimant's residual capabilities. A vocational expert testified that, after considering claimant's physical and mental impairments, and his age, education and work experience, he was of the opinion that there were certain types of light or sedentary jobs which claimant was capable of successfully performing. The following jobs were mentioned by the vocational expert: (1) hand sanding and light furniture assembling; (2) bench assembling of electronic equipment; (3) packaging and stenciling; (4) canvas cutting and rivet installing; (5) paper box assembling; (6) inspecting and assembling pressure controls, bellows, and automobile thermostats.

The pertinent medical evidence in the record consists of seven reports dated between October 27, 1967, and January 30, 1969.

The earliest medical report is a copy of the discharge summary from the Johnston Memorial Hospital in Abingdon, Virginia, which shows that claimant was admitted on October 27, 1967,

and discharged on November 5, 1967. At the time of admittance, claimant complained of gas, upper abdominal pain, and a thumping sensation in his chest. He had not worked since August, 1967, because of his symptoms. This discharge summary, written by Dr. James H. Bowden, Jr., shows that claimant was dismissed under the following diagnosis: "Suspect duodenal ulcer; Rule out hiatus hernia; Bronchitis, chronic, mild; Sciatica, left, probably due to old herniated nucleus pulposus, L-5—S-1 level; Hemorrhoids, rectal." An x-ray report made by Dr. Lee J. Paul, dated October 31, 1967, was attached to the above discharge summary, and it concluded with the following impression: "Normal gallbladder studies; narrowing of the lumbosacral disk; Pulmonary fibrosis; Duodenal ulcer."

On January 2, 1968, claimant was examined by the Veterans Administration for the purpose of securing a nonservice-connected disability pension, which he is now receiving. The examining physicians diagnosed claimant's ailments as: Duodenal ulcer, active; Herniated nucleus pulposus with sciatica; chronic bronchitis; External hemorrhoids. An attached psychiatric evaluation was made by Dr. Robert W. Beck at the request of the Veterans Administration. Dr. Beck concluded that claimant has "secondary functional disturbances in the form of tension, anxiety, apprehension, feelings of being tight and wound up, and conversion symptoms of somatic complaints and short periods of depression." The final diagnosis was anxiety reaction with some depression and hysterical features.

The claimant was next seen at the Clinch Valley Clinic Hospital by Dr. Tillou Henderson on April 25, 1968. Dr. Henderson, an orthopedic surgeon, noted that claimant walked with a normal gait and that he sat in a normal posture. Examination of the claimant's back revealed it to have a grossly normal appearance. Some tenderness, however, was noted along the left sacrus spinalis muscle. X-rays were taken of the lumbar spine in the AP, lateral and oblique views which revealed the vertebras to be normal in height and the interspaces preserved with the exception of L-5/S-1 which was frequently seen to be narrowed. "The interspaces otherwise are unremarkable. The spine is a little straightened as seen in the lateral view. There is minimal to moderate spurring anteriorly on the lumbar interspaces."

Dr. Henderson concluded his report as follows: In this case it is apparent that the patient has had a lower lumbar disc lesion of significance. It would appear that he has recovered from the acute phase of the condition and has been left with the residuals as described. It does not appear that any treatment for it would be indicated, and it would seem likely that it would be uncomfortable for him to attempt much work requiring heavy bending, stooping, or lifting."

On May 22, 1968, pulmonary ventilation studies were performed at the Clinch Valley Clinic Hospital by Dr. Robert A. Abernathy. Dr. Abernathy interpreted the studies to be essentially normal.

Claimant was next examined on September 24, 1968, by Dr. Pierce D. Nelson, psychiatrist. Dr. Nelson, after enumerating all claimant's various complaints, concluded as follows:

"In summary, we have grossly a normal neurological examination except for the diminished achilles tendon reflex on the left which is diminished compared with the right. It must be remembered that a lot of this man's difficulty is due to quite an emotional make-up, and I think that some of his emotional problems are contributing to his difficulty in adjustment."

On December 9, 1968, claimant was examined by Dr. P. G. Gregoriou, a general practitioner. This examination revealed an "emphysematous chest with retrosternal retraction and increase AP diameter of the chest with distant breath sounds and some ronchi." Chest x-rays revealed emphysema moderate to severe, bronchitis, and pleuritic scarring. Dr. Gregoriou remarked in con-

**1150**

clusion that it appeared from a clinical standpoint that claimant was disabled. Although it was stated that Dr. Gregoriou is claimant's treating physician, nothing in his very brief report indicates that such is the case. The number of visits to him or the length or nature of his treatment is not shown in the record. His report is the only significant indication of emphysema.

At government expense, claimant was examined on January 24, 1969, by Dr. James C. McFaddin, an orthopedic specialist. After reviewing claimant's medical history, Dr. McFaddin concluded:

"The physical examination of this man's lumbosacral region is essentially within normal limits. He has full range of motion in flexion, lateral flexion, rotation and extension. The paravertebral musculature is of excellent strength. There appeared to be no particular pain in the extremes of motion in any place.

I would not consider this man to have any rotable impairment * * * since he has full and normal motion.

The degenerative disorders in the lumbar region, such as this [sic] radiologically and physically apparent in this man, should impose moderate limitation for stooping, bending and lifting. There would be no limitations for sitting, standing, walking, squatting, climbing stairs, or in the use of public transportation, driving a vehicle, or doing bench work or similar type activities.

His present physical capacity, from a purely orthopedic standpoint, is such that he can do work which does not require strenuous use of the back in the flexed position or strenuous use of the lower extremities. He can do moderate work on a regular basis."

█ In order to be entitled to a period of disability under § 216(i), 42 U.S. C. § 416(i), and to disability insurance benefits, under § 223 of the Act, 42 U. S.C. § 423, claimant has to establish that he was under a disability, as defined by the Act, which commenced at a time when he met the special insured status requirements of the above sections. Claimant meets these special insured status requirements until September 30, 1971. Therefore, on the basis of his application filed March 7, 1968, claimant must establish that his disability commenced prior to March 17, 1969, the date the Secretary's decision became final.

A review of claimant's allegations discloses that he suffers mainly from ulcers, low back pain, sciatica, emphysema, and nervous spells.

The record shows that claimant was hospitalized at one time for his ulcer, but that he responded well to his prescribed medication and diet. There has been no malnutrition, anemia, or other serious complication as a result of the ulcer. On being discharged from the hospital, claimant was only restricted from working for a week to ten days.

In regard to claimant's long existing back condition, two orthopedic specialists examined claimant and found that he had suffered from a damaged disc in his lower back, but that he had long since passed the acute phase. It was felt that while claimant still suffered from some residuals of his injury, he was capable of performing moderate work which did not require heavy stooping, bending, or lifting.

As for claimant's emphysema, the record contains one doctor's report stating that he is clinically disabled on this account. This conclusion was based upon a physical examination and x-ray findings. The report, however, mentions nothing of a pulmonary ventilation study made only six months prior which was considered to be essentially normal.

Two psychiatric evaluations made of claimant reveal that he has an anxiety reaction with some depression. Neither report indicated, however, that claim-

ant's mental condition was in any way disabling.

■■ The burden of proving disability in this proceeding lies with the claimant. It is not the initial responsibility of the Secretary to prove nondisability. Justice v. Gardner, 360 F.2d 998 (6th Cir. 1966). Claimant must show by producing objective medical facts that he suffers from impairments which preclude him from engaging in substantial gainful employment. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). This burden, however, need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ It is also clear that the mere presence of a disease or impairment is not in and of itself disabling, but it must be shown that the disease or impairment causes functional limitations which preclude claimant from engaging in substantial gainful activity. Durham v. Gardner, 392 F.2d 168, 169 (4th Cir. 1968), cert. den. Smith v. United States, 393 U.S. 941, 89 S.Ct. 308, 21 L.Ed.2d 278.

■ In a case such as the one at bar, where there is a conflict in the medical evidence respecting the claimant's condition, the Secretary's decision resolving the conflict against the claimant is unassailable. If the Secretary's finding of the nonexistence of disability is supported by substantial evidence, it is conclusive and it must be affirmed whether or not this court agrees with the final determination. Skeens v. Gardner, 377 F. 2d 405 (4th Cir. 1967); Vicars v. Gardner, 285 F.Supp. 527 (D.C.Va. 1968).

■ A review of the entire record convinces the court that the decision of the Secretary is supported by substantial evidence. Accordingly, the defendant's motion for summary judgment will be granted and the plaintiff's motion denied.

An order is this day entered consistent with this opinion.