**Willard M. CANDLER**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 8101.**

United States District Court,
E. D. Tennessee,
N. D.

Oct. 31, 1973.

Richard W. Krieg, Morton, Lewis, King & Jones, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U. S.C. § 405(g) seeking review of an adverse decision by the Secretary of Health, Education and Welfare. In January of 1971, plaintiff filed an application for a period of disability and disability insurance benefits. After reviewing his application, defendant found plaintiff to have been disabled since April of 1969. Later after a reconsideration of plaintiff's application it was found that his disability had ceased in September of 1971. A *de novo* hearing by an independent hearing examiner reached the same conclusion. The Appeals Council approved this decision on July 20, 1972, making the Secretary's decision final.

The record discloses that plaintiff became disabled at age forty-seven due to a fracture of the left lateral femoral condyle. The injury was received while he was working with a track gang repairing railroad tracks. Plaintiff has completed the fourth grade in school. He has been employed primarily as a manual laborer. At age fifteen, he began working in a lumber yard operating a planing machine. Except for eight years as a maintenance man for a state park, he has worked almost entirely in the type of occupation that he held when injured.

In 1944, plaintiff sustained war injuries in Italy. He receives, as a result of these injuries, a 60% service related disability pension.

Plaintiff was hospitalized for the injury that eventually led to his receipt of Social Security benefits on April 20, 1969. Dr. William K. Massie, an orthopedist, noted that X-rays revealed an intra-articular fracture of the left knee. In the discharge summary, Dr. Massie diagnosed a fracture of the left lateral femoral condyle and a possible tear of the mediocollateral ligament.

On July 16, 1969, plaintiff was again hospitalized. Dr. Massie remarked that:

"This patient had a manipulation under anesthesia and has done well. He is being discharged to carry out active exercises at home and will be seen in the Somerset Clinic 8–22–69.

"Referring physician is Dr. Leeds, Oneida, Tennessee. The range-of-movement of the left knee has increased from 170 to 90 degrees. This is showing excellent progress."

Doctor Joe E. Tittle, an orthopedist, began seeing plaintiff on March 6, 1970. At that time he observed that plaintiff walked with a limp characteristic of a

gluteus medius weakness gait or a knockknee deformity gait. He diagnosed a healed fracture of the femur with an incongruous surface of the lateral femoral condyle and residual valgus deformity at the knee.

On April 22, 1970, plaintiff was admitted to Oak Ridge Hospital. The following day Dr. Tittle performed a closed wedge osteotomy in the supracondylar area of the left femur. The fracture was fixed with a Richard's compression plate and a bone graft was done. On discharge, plaintiff's condition was characterized as improved.

Throughout the remainder of 1970, plaintiff was seen by Dr. Tittle. On March 8, 1971, Dr. Tittle noted that:

"It is my opinion the patient has reached maximum recovery. He has sustained an estimated 30 per cent permanent partial physical impairment to the whole left leg as a result of his alleged accident. It is my opinion that this patient would be a poor risk patient to return to his laboring job as part of the track gang with the railroad. He would be a risk to himself to reinjury and a liability to the railroad. I recommend that he not be reemployed in this capacity."

On September 17, 1971, Dr. Massie again reported concerning plaintiff. He stated that:

". . . We would estimate that this man has a progressive arthritic change in the left knee that the functional impairment from his previous injury and the resulting surgical osteotomy with a shortening of ½" amounts to approximately 40% to the left lower extremity or to the whole man. We believe that this is sufficient to prevent him from doing the unrestricted labor that was required by the railroad and for this reason he will be compensated by the railroad. We do not believe however that this is sufficient functional impairment to obviate any working condition, and we believe that light work activity can

be accomplished by this patient with satisfactory results."

Doctor Tittle saw plaintiff on November 13, 1971. His report on this date summarized plaintiff's medical history. Dr. Tittle stated that plaintiff had received a serious injury to the left femur. Plaintiff's knee joints continue to have discrepancy but his overall weight distribution was improved by the osteotomy. Further, it was noted that some stiffness remained and that plaintiff was not able to do a deep knee bend. It was Dr. Tittle's opinion that:

". . . this patient is 100 per cent disabled to perform the duties of a laborer. He should do no squatting or climbing type of activity. I feel that he should be a candidate for a rehabilitation program for retraining. He could be a useful member of society if he were trained for a sit down type job or possibly a standing job, such as a barber."

Doctor Samuel O. Hodges, an orthopedist, saw plaintiff on December 16, 1971. After a complete physical examination, Dr. Hodges diagnosed a post fracture of the left femur, closed, with open reduction and internal fixation. He noted residual chondromalacia of the patella of the left knee; residual shortening of the left femur, residual loss of musculature of the left thigh.

Doctor Leeds, a general practitioner and plaintiff's family physician, submitted a report on April 12, 1972. Dr. Leeds stated that in January of 1972 plaintiff's weight had declined to 120 pounds and that he complained of nausea and vomiting. A GI series revealed a duodenal ulcer. By February, plaintiff had begun to gain weight. Dr. Leeds concluded that:

". . . I do not feel that he is able to be employed on the railroad section with a knee that is unstable as this one is."

The only issue for our determination is whether the Secretary's decision that plaintiff had ceased to be disabled with-

in the meaning of the Social Security Act as of September of 1971 is supported by substantial evidence. We conclude that there was substantial evidence warranting the Secretary's determination.

Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A) provides in part that:

" . . . an individual (except a widow, surviving divorced wife, or widower for purposes of section 202(e) or (f)) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

The term "disability" is defined as:

" . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."

Section 223 also provides that:

"(3) For purpose of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

Disability benefits are required to terminate with "the third month following the month in which his disability ceases." 42 U.S.C. § 423(a).

The medical evidence demonstrates that plaintiff received a severe injury in April of 1969. He subsequently underwent a series of operations to correct the injury. The Secretary determined that by September of 1971 plaintiff's condition was such that he was no longer disabled within the meaning of the Act.

The reports of Dr. Tittle show plaintiff's improvement over the months. After Dr. Tittle inserted the Richard's plate in April of 1970, plaintiff returned thereafter for regular appointments. On July 3, 1970, Dr. Tittle observed that the X-rays showed the osteotomy solidly united. He advised plaintiff to begin partial weight bearing with a crutch support. On August 17 plaintiff was told to be as fully ambulatory as possible. After months of visits, Dr. Tittle concluded that plaintiff was only "100 percent disabled to perform the duties of a *laborer*." He felt that plaintiff was a candidate for a rehabilitation program and could perform a sitting or a standing job such as a barber.

The other doctors that examined plaintiff concluded similarly. Dr. Massie stated that plaintiff had a 40% impairment to the lower left extremity or to the whole man. He thought light work could be accomplished by plaintiff with satisfactory results. Dr. Leeds felt plaintiff was incapable of returning to his previous employment. No physician examining plaintiff concluded that plaintiff was incapable of doing work because of the impairment.

Given plaintiff's ability to perform light work, the vocational expert testified that there was a variety of jobs plaintiff could perform considering his age and educational background. These included positions assembling head lamps for automobiles, security guard, and an assortment of jobs requiring only sitting at a bench. All of these positions were available near plaintiff's residence. None of these jobs would require squatting or climbing.

We conclude that there was substantial evidence supporting the defendant's determination. It has been held that the loss of a limb is not, in and of itself, an injury as to render an individual incapable of performing substantial gainful activity. Robinson v. Celebrezze, 326 F.2d 840 (5th Cir. 1964). In this case, plaintiff retains some residual use of his left leg. Nor under these facts do we think the existence of a duodenal ulcer is sufficient, either alone or in combination, to constitute a finding of disability under the Social Security Act. Justice v. Gardner, 360 F.2d 998 (6th Cir. 1966). Accordingly, it is ordered that plaintiff's motion for summary judgment be, and the same hereby is, denied. Further, it is ordered that defendant's motion for summary judgment be, and the same hereby is, granted.