Clyde C. JOHNSON, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 1171.

United States District Court
S. D. West Virginia,
at Huntington.

May 29, 1963.

Glyn Dial Ellis, Logan, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to disability insurance benefits or to a period of disability under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that there is substantial evidence to support the final decision of the Secretary and that defendant's motion for summary judgment should be granted.

Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), provides that "As part of its answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based," and that "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It also provides that "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." The next subsection 205(h) of the Act, 42 U.S.C.A. § 405(h), expressly restricts the judicial remedy to the aforesaid manner of judicial review.

On October 2, 1961, plaintiff filed an application for disability insurance benefits and to establish a period of disability, alleging that he became unable to work in March, 1949, at approximately 52 years of age, because of high blood pressure, bad vision, and ulcers.[1] This application was denied by the Bureau of Old-Age and Survivors Insurance both

1. Plaintiff had previously filed an application to establish a period of disability on August 3, 1955. This application was denied and became the final decision of the Secretary on August 27, 1958, when the Appeals Council denied plaintiff's request for review. Accordingly, that decision is not before this court for review.

initially and upon reconsideration. On October 31, 1962, a hearing examiner found that plaintiff was not entitled to disability insurance benefits or to a period of disability under the applicable sections of the Act, as amended. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on January 18, 1963.

In order to meet the statutory definition of disability, plaintiff had to establish that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment or impairments which began no later than March 31, 1954, for entitlement to disability insurance benefits or the establishment of a period of disability. He last met the special insured status requirements on March 31, 1954.

Plaintiff was born on October 18, 1897. He worked most of his adult life in the coal mines performing such jobs as loading coal, working on the tracks, and discharging general chores as they were assigned to him. In January, 1949, plaintiff was "cut off" from work in the mine along with others. They were all told that they could not work anymore. Apparently, plaintiff did not cease to work for physical reasons. It is also clear from the evidence of record that plaintiff has not engaged in any substantial gainful activity since 1949 and has not made any serious attempts to find any work since that time. There is, however, evidence that shortly after he was laid off plaintiff went to Ohio, and while assisting in loading hay, he fell off a hay truck injuring his head, neck, and back. He was not hospitalized for this nor did he consult a doctor at that time.

Before discussing generally the medical evidence of record, it is important to observe that many of the medical examinations and resulting reports were conducted and made between three and seven years after plaintiff's insured status expired on March 31, 1954. Therefore, these later reports are not of much benefit or aid in determining just what plaintiff's physical condition was during the effective period of his present application. Even if plaintiff has become disabled after the expiration of his insured status (which fact is not here decided), he would not be entitled to the relief sought. His disability, if any, must have commenced at a time before his insured status expired.

On January 10, 1949, Dr. Robert K. Scott examined plaintiff for United Mine Workers welfare purposes. He found that plaintiff was disabled for regular employment in or around the mines because of his blood pressure of 180/110 and his poor vision, rated at 20/70. In this same report Dr. Scott noted that plaintiff was laid off because of lack of work.

Plaintiff was examined for the West Virginia Department of Public Assistance on April 4, 1951. In that report the examining physician reported hypertension cardiovascular disease with early myocardial failure, dental problems, and a visual defect which was "corrected fairly well." He further stated that plaintiff must not exert himself by climbing or heavy lifting. He also felt that plaintiff was not able "to do usual work." He did not state that plaintiff could not do work other than his usual mine work.

Dr. John E. Stone reported on July 13, 1954, that on physical examination plaintiff's blood pressure was 110/70; his heart was normal in rhythm, rate, and quality. His lungs were clear and slightly emphysematous; his abdomen was negative. He also reported only minimal arteriosclerotic changes. The cardiac silhouette was normal. An electrocardiogram was normal with a slow rate. The same medical doctor reported on September 9, 1954, that he found some cervical osteoarthritis and that scout film and X-ray of the gastro-intestinal system was negative. X-ray of the chest revealed no cardiac enlargement. A masters two-step electrocardiogram was negative, but a "stat" electrocardiogram made when plaintiff was complaining of his heart trouble showed auricular fibril-

lation. The doctor stated that "I think this is the answer to his cardiac situation." Plaintiff was placed on three grains of quinidine sulfate "as a preventive of future episodes of auricular fibrillation."

A further report made for the West Virginia Department of Public Assistance on August 15, 1956, stated, *inter alia*, that plaintiff had a left inguinal hernia (not mentioned in prior reports) and that he was unable to do any work.

In one of the 1958 reports it was noted that plaintiff had become blind in his left eye on December 15, 1957 (long after the expiration of plaintiff's special insured status). Other later reports showed an enlarged heart and a high blood pressure (204/130 in one report dated May 5, 1958). Statements were also made to the effect that plaintiff was permanently disabled.

The latest medical report, made in August, 1961, noted the auricular tachycardia and an increase in the size of the heart silhouette. Heart tones were poor and rhythm was regular. His chest was clear. An electrocardiogram revealed sinus rhythm with evidence of coronary insufficiency. Once again the use of quinidine sulfate was recommended as a prophylactic measure against recurrence of auricular tachycardia.

On the basis of the evidence discussed above and all other evidence of record, both objective and subjective, it is clear that plaintiff's blood pressure, at least prior to March 31, 1954, was not disabling, that his vision was "corrected fairly well" (and therefore certainly not disabling), and that he had no trouble with his entire gastro-intestinal system (which inferentially would establish the absence of disabling ulcers). Also plaintiff's "auricular fibrillation" apparently can be prevented by his taking quinidine sulfate. Furthermore, his heart condition was not described as serious. What his condition is at present is not important to the issue presently before this court as explained above. It is also of significance that since 1949

plaintiff apparently has made no attempt to utilize his residual capacity to do other types of work. Even though he may not be able to perform his usual mine work, his overall physical condition during the time that he met the special insurance requirements was not such that he could not have performed any substantial gainful activity within the meaning of the Act, as amended.

On the basis of the entire record there is substantial evidence to support the final decision of the Secretary that plaintiff is not entitled to disability insurance benefits or to a period of disability under the applicable sections of the Act, as amended. Defendant's motion for summary judgment is granted.