Agnes C. WATERS, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

No. 67-C-269.

United States District Court
E. D. Wisconsin.

April 2, 1968.

Herbert A. Eggie, Milwaukee, Wis., for plaintiff.

James B. Brennan, U. S. Atty., by Thomas E. Weil, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## OPINION AND ORDER

GRUBB, Senior District Judge.

This action for review of the final order of the Secretary of Health, Education and Welfare denying application for total disability benefits is before the court on defendant's motion for summary judgment.

Plaintiff, after administrative denial of her claim, was granted a hearing de novo. The Examiner concluded that she failed to establish that she had an impairment or combination of impairments of such severity as to justify a finding that she is or has been unable to engage in gainful work including the type of work she performed before the onset of the claimed disability. He based this ultimate finding on his view of the record, particularly on the lack of objective medical evidence concerning the impairments and on the fact that plaintiff was able to and did obtain employment about two months after the onset of disability at the same type of work she had performed before, was able to continue the work for a substantial period of time and was then able to engage in strenuous activities such as housework and the operation of an automobile.

On plaintiff's objections to the Examiner's findings, the Appeals Council sustained objection to the Examiner's factual summary of plaintiff's work history subsequent to the onset of the claimed disability, and discounted his summary in this respect. The Appeals Council nevertheless concluded that the remaining objections did not establish that his conclusions were wrong and denied the request for review.

Review of the record discloses that plaintiff sustained an injury to her back in an automobile rear end collision on August 24, 1965. She was seen by Dr. A. Allen Sverdlin, a general practitioner, on August 26, 1965, and intermittently thereafter for as much as five times a week, with a final examination on January 4, 1966. At one time in this period there was also consultation with a Dr. H. Sadoff, an "orthopedist." X-ray examination revealed no bone pathology. Based on the history of the accident and plaintiff's subjective complaint of severe low back pain, Dr. Sverdlin reached a diagnosis of severe sacro-iliac sprain with right sciatica and sprain of the muscles of the upper thoracic region and prescribed treatment of persistent diathermy therapy, muscle relaxants, analgesics, narcotics and sedation. On the final examination he found her condition improved but not completely healed.

Plaintiff was examined at Milwaukee County Hospital Outpatient Department by Dr. Roger L. Ruehl, a staff man, on January 26, 1966, on her complaint of intermittent back pain with numbness of the right lower extremity. X-ray examination revealed no evidence of recent fracture or injury and showed well-maintained vertebral disc spaces. Some degenerative changes involving the apophyseal joints in the lower lumbar area with bony sclerosis and spurring in this area and minimal osteitis condensans ilii on the left were noted. Dr. Ruehl made the diagnosis of chronic back pain, hypertension and obesity.

On April 4, 1966, plaintiff was seen by Dr. Paul Jacobs, an orthopedic specialist. X-ray examination was negative and no significant arthritic degeneration was found. Dr. Jacobs noted that right and left lateral bending and rotation were performed through one-half of the expected range, evidently limited by the complaint of pain; that there was pain on flexing of hips in supine position and major tenderness about the upper sacrum and right sacro-iliac region; that there was pain in the back on motion of feet and toes against re-

sistance and subjective hypesthesia about the right leg. Dr. Jacobs' impression was that plaintiff suffered an ilio-lumbar strain with functional overlay; that her ability to stand and walk were somewhat limited by fatigue; that she could squat with discomfort and that heavy lifting was to be avoided at the present time. He expected further improvement.

Psychiatric examination by Dr. Paul Giannattasio, a specialist in psychiatry, on July 18, 1966, produced a diagnosis of anxiety neurosis and compensation neurosis. Dr. Giannattasio observed that plaintiff should be encouraged to become involved with vocational rehabilitation in hopes that she could return to work after her "claim" was cleared up.

Finally, plaintiff was seen by Dr. Alan R. Crosby, a doctor of osteopathy. X-ray findings were essentially negative. Physical examination disclosed diminished right Achilles tendon reflex and increase of pain on leg raising test and dorsal flexion of foot and leg. Dr. Crosby noted his impression that plaintiff had an unstable lumbo-sacral mechanism, a "true mechanical weakness" of the lumbo-sacral joint giving rise to episodes of chronic low back pain. He commented that any activities beyond a narrow range would result in functional demands exceeding the strength of this area.

Plaintiff testified on the hearing before the Examiner that she has difficulty in walking or standing for any length of time. On standing, her back gets sore at the bottom and her leg becomes numb. On sitting on a hard surface she has sharp shooting pains. She is able to walk about three blocks before the onset of pain. Pain is relieved by sitting down and medication. She takes about four pain pills a day.

Plaintiff lives in a two-story apartment together with her teenage son. She prepares meals and makes her bed, but states that she cannot lift anything over three to four pounds. She drives her car for short distances. When she was working full time, some four months following her injury, she had to have medical treatment and medication and had to go to bed immediately on return to her home following her hours of work to obtain relief from the pain.

At the time of onset of the claimed disability plaintiff was 47 years of age. She had a tenth grade education. She had worked as a presser, machine operator, gift wrapper, stock clerk, sales clerk, and sales head. Following the injury, she worked for one day in her previous sales job and later returned to this same place of employment on a part-time basis from October 26 to November 2, 1965. During this time she experienced difficulty in lifting, reaching up, bending, and standing for prolonged periods of time. The job terminated because the employer needed full-time, rather than part-time help. Plaintiff then took a job as a gift wrapper at Sears from December 2 to December 24, 1965, two weeks full-time and the remainder part-time. The work was seasonal. She testified that she required medical attention during this period.

Since then plaintiff has applied for various jobs. According to her testimony she was not hired in two instances because of her history of back trouble. In one case she failed to pass a qualifying test and in two others the reason for the failure to obtain employment was not specified. Plaintiff turned down part-time work at Goodwill Industies since she felt that the hourly pay was not sufficient.

■■ On judicial review of a final decision of the Secretary of Health, Education and Welfare, the findings of the Secretary, if supported by substantial evidence, shall be conclusive.[1] Disability qualifying for payment of benefits is defined as the inability to engage in any substantial gainful activity by reason of

1. Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g); Jones v. Celebrezze, 331 F.2d 226, 227 (7th Cir. 1964).

any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[2] The burden of proof of establishing the existence of a qualifying medically determinable impairment is on the claimant for benefits.[3]

It is plaintiff's contention that the Examiner in this case did not fully appreciate the medical evidence and accordingly reached the erroneous conclusion that plaintiff did not have a medically determinable disabling impairment. Review of the entire record convinces the court that there is substantial evidence to support the final decision of the Secretary.[4] Crediting the impressions of the various physicians that plaintiff has a low back strain with functional overlay and compensation neurosis, resulting in some limitation of motion and of the ability to stand, walk or sit on hard surfaces for prolonged periods of time and of the capacity to lift objects exceeding three to four pounds in weight; as well as plaintiff's own testimony as to the nature and persistence of pain and the need for treatment and medication, there is nevertheless insufficient evidence to support an inference that plaintiff's impairment totally disables her from engaging in any gainful employment. Two of the physicians noted the low back sprain but did not express an opinion as to the extent of any limitation on plaintiff's activities. The orthopedic specialist observed some limitation in motion and in the ability to stand and walk and commented that

heavy lifting was to be avoided. The psychiatrist recommended that plaintiff should be encouraged to become involved with vocational rehabilitation in hopes that she could return to work after her claim was cleared up. One doctor indicated that her activities should be limited to a "narrow" range without spelling out the dimensions.

This evidence is insufficient to support the conclusion that plaintiff's impairment totally disables her from engaging in any gainful employment of a more sedentary nature subject to the limitations on lifting and prolonged standing and walking. To the contrary, the record shows that she is able to undertake moderate activities in her home, is able to do some driving, and that she turned down work at Goodwill Industries, not because she could not perform the work, but because she thought the job was not sufficiently remunerative.

In light of the evidence of record, plaintiff has failed to meet her burden of showing that she has a medically determinable physical or mental impairment of sufficient severity as to totally disable her from engaging in any gainful activity. Under these circumstances the Secretary does not have to show that suitable employment was available to her or to find her a job. Jones v. Celebrezze, 331 F.2d 226, 228 (7th Cir. 1964).

In accordance with the foregoing opinion, the defendant's motion for summary judgment must be and it is hereby granted. The clerk is directed to enter judgment dismissing the complaint.

---

2. Sections 223 and 216(i) of the Social Security Act, 42 U.S.C.A. § 423 and 416 (i).

3. Jones v. Celebrezze, 331 F.2d 226, 228 (7th Cir. 1964); Campbell v. Gardner, 370 F.2d 921, 922 (6th Cir. 1967).

4. The conclusion is reached on review of the entire record without passing on the validity of the Examiner's summary of the evidence or his reliance on a regulation requiring objective "medical, clinical or laboratory" evidence of the existence of plaintiff's claimed condition. In view of the record of this case, any error in this respect would not be prejudicial. Cf. Nelms v. Gardner, 386 F.2d 971 (6th Cir. 1967).