Alva LONG, Plaintiff,

v.

Wilbur J. COHEN, Secretary Health, Education & Welfare, Defendant.

Civ. A. No. 68–C–7–A.

United States District Court
W. D. Virginia,
Abingdon Division.
Sept. 19, 1968.

Harry P. Rowlett, Jonesville, Va., for plaintiff.

James P. Brice, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

From an adverse decision of the Secretary of Health, Education and Welfare denying disability insurance benefits, rendered on January 12, 1968, Alva Long, a resident of Rose Hill, Virginia has appealed to this court. Born October 26, 1913, he is now fifty-four years of age. Possessor of a second grade education, he can sign his name, but is otherwise illiterate. At the age of thirteen, he went to work with his father in the coal mines as a hand loader. Some twenty-nine years later in 1955, after steady employment, Long was injured in a shuttle car accident in the mines. Unable to return to the heavy work in the mines because of his injuries, he went to Port-

land, Oregon and secured work as a farm laborer. His work consisted of supervising some three hundred school children picking berries, seeing that the children picked all the berries and how long they worked. Mr. Long testified at his hearing that he had nothing to do with paying the children or loading the berries once they were picked. According to the disability interview report, the claimant supervised some eight to ten people during the winter months in pruning activities. This employment continued until 1965. During that year, on March 17, 1965, Long underwent a hemorrhoidectomy operation. Upon being released from the hospital Long returned to the berry farm and worked until May of 1965. According to the claimant he became disqualified to work on the berry farm in May of 1965. After that he worked for three months on a county welfare project in Oregon gluing flower boxes together. This entailed ten days of work per month. According to the claimant, he was disqualified from this work because he had to take a "shot" for his lungs every week. Sometime in late 1965 or early 1966 a physician in Oregon suggested that the claimant return to Virginia or a warmer climate because of a bronchitis condition. The claimant returned to Virginia in May 1966. A month later he was involved in an automobile accident in which he sustained several fractured ribs and a fractured hip.

In his application for disability insurance benefits, filed on June 16, 1966, Alva Long claimed that he was prevented from working because of ulcers, bronchitis, a useless left arm and a rupture. As his special insured status will not expire until December 31, 1970, the Secretary's findings must necessarily have evaluated claimant's condition as of the date of the final decision. The Secretary found that as of January 12, 1968 that the claimant's impairments do not preclude sustained physical activity, such activity being commensurate with his usual occupation as a farm foreman and that the evidence fails to establish that the claimant's impairments, either singly or in combination, prevented him from engaging in substantial gainful activity prior to the date of the Secretary's decision; therefore, the claimant is not under a "disability" as defined by the Social Security Act, §§ 216(i), 223, as amended. 42 U.S.C. §§ 416(i) and 423.

The Secretary does not attempt to claim that Mr. Long is able to return to his former employment in the coal mines. It is clear from the evidence that he cannot. The Secretary has attempted to prove that the claimant can return to his former position as a supervisor of agricultural labor.

The Appeals Council reviewed the medical history of Mr. Long and we briefly reviewed it here.

The earliest medical records, from the University of Oregon Medical School, show that Mr. Long had been seen in the General Medicine Clinic on several occasions during 1956 with complaints of stomach pain. An upper gastrointestinal series revealed a distorted duodenal cap with no active ulcer crator demonstrated. He was treated with Sippy tablets #1 and #2 and Belaps.

Mr. Long returned to the clinic in November, 1964, complaining of abdominal pain. An upper gastrointestinal series at this time demonstrated scarring but no active ulcer. Cholecystograms had been normal. Barium enema had been normal; EKG, normal.

Mr. Long was admitted to Multnomah County Hospital (Oregon) on March 9, 1965, with prolapsing hemorrhoids. A hemorrhoidectomy was performed on March 17, 1965. He developed postoperative pneumonitis which responded well to penicillin. A chest x-ray on March 19, 1965, revealed no evidence of any active inflammatory disease. Claimant was discharged from the hospital on March 25, 1965. An examination in the Surgery Follow-Up Clinic on April 3, 1965, revealed that the hemorrhoidectomy site was well healed and there was very little tenderness. Mr. Long had also complained of interscapular pain but an appointment at the Orthopedics Clinic for eval-

uation on September 20, 1965, was cancelled. The hospital had no further contact with Mr. Long.

The record shows that the claimant received emergency treatment in a clinic at Middlesboro, Kentucky on June 18, 1966, after he had been involved in an automobile accident. The final diagnosis was that he had fractured three ribs and his hip. The diagnosis also included bronchiectasis, old. The claimant spent four days in the clinic and some twenty-one days in bed at home. This accident occurred two days after Mr. Long had filed his application for disability insurance benefits.

On September 12, 1966, the claimant was examined at the Appalachian Regional Hospital, Inc., by Doctor Charles L. Kirkpatrick, a specialist in internal medicine. The claimant's chief complaints were stomach trouble, pain in the left hip and a painful stiff left shoulder. The examination showed that the claimant was well developed and fairly well nourished. In the extremities there was marked purpuric discoloration of the entire right arm due to recent injury. There was apparent tenderness over the medial surface of the left thigh. Claimant could walk on his toes and heels without difficulty and straight leg-raising was neither painful nor restricted. All reflexes were present and active. Neurologically there was a glove type anesthesia at the wrist on the left which was not believed to be true anesthesia. Laboratory studies were within normal limits. Chest x-rays showed old healed deformities of the right second rib, and of the left fourth, fifth and sixth ribs. There was calcification in the arch of the aorta without heart enlargement. Lung fields were clear without recent infiltration. An x-ray of the right shoulder showed a widening of the acromioclavicular joint but without fracture of the central portion of the acetabulum at junction. A pulmonary function study showed that the claimant may have some difficulty in breathing. The doctor's final diagnosis was (1) Arteriosclerosis, aorta (2) Joint separation, old, acromioclavicular joint, left (3) Fracture, old, central portion of acetabulum and ischiopubic junction on the left (4) Arthritis, osteo, chronic, old, hip joint, left (5) Ulcer, duodenal, old, with scarring and without active crator (probable).

Based upon the above information, the Secretary found that the claimant was not eligible to receive disability insurance benefits and so informed the claimant by letter dated November 9, 1966. Mr. Long filed a request for reconsideration on November 14, 1966. As a result of this request a further examination was performed on January 30, 1967. The claimant's chief complaint on this examination was stomach trouble and he told of vomiting spells and cramping pains. Dr. Kirkpatrick again examined the claimant. The findings were essentially the same as reported in the first examination except that the final diagnosis was mild antral gastritis and a chronic active non-obstructing duodenal ulcer. Based on the above examinations the claimant was notified on March 2, 1967, that the reconsideration determination had resulted adversely to him.

Pursuant to a written request, a hearing was held by a Hearing Examiner of the Bureau of Hearings and Appeals on April 27, 1967, in Middlesboro, Kentucky. The claimant, represented by an attorney, testified at the hearing. The only other person to testify was Charles F. Elton, Ph.D., a vocational expert. Based upon the testimony at the hearing, plus the prior medical records which were introduced into evidence, the hearing examiner found that the claimant's impairments were a chronic, active, non-obstructing, duodenal ulcer with mild antral gastritis which was controllable by diet and medication; minor residuals from an accident to the right shoulder with a mild arthritis of the left hip joint. The hearing examiner concluded that these impairments do not preclude the claimant from performing substantial gainful activities in the types of work in which the claimant was last employed, and thus the claimant is not disabled

within the meaning of the Act. The hearing examiner's decision is dated May 18, 1967.

Mr. Long filed a request for review of the hearing examiner's action on June 1, 1967. The Appeals Council of the Bureau of Hearings and Appeals granted the request. Since there was an indication in the record that the claimant might have a significant impairment of his breathing capacity and also that there might be a possible deterioration of the claimant's gastrointestinal condition, the Appeals Council concluded that a current physical examination and laboratory tests were necessary in order to gain further evidence concerning these impairments.

On August 30, 1967, the claimant was examined at the Appalachian Regional Hospitals, Inc., by Dr. Loyal E. Wilson, a specialist in Orthopedic Surgery. Part of the physical examination reads:

> The patient has a slight limp. During the examination, he kept himself rather rigid and was quite uncooperative. X-ray examination was impossible because of the way he kept himself stiff. On examination of the shoulder, he seemed to have rather shortness of his clavicle but it seemed to be the way he was holding his shoulder rather than actual shortening. His back was completely stiff, but I believe also this was the way he was holding his back. He had full range of motion of the shoulder. He seemed to have good range of motion of all the joints of his legs, but here again, he held himself quite rigid. Leg signs were negative. There does not seem to be any changes in the sensation or reflexes. There is, however, full range of motion of the hips, bilateraly [sic]. Examination of the left hand shows that he has some atrophy of thenar eminence and some limitation of motion of the thumb. This is apparently due to a nerve injury he received from the laceration of the wrist from the fruit jar. (Claimant was accidentally cut by a fruit jar in 1936) (Parenthesis added).

Dr. Wilson stated in the report that he did not believe that either the claimant's shoulder or hip injury are incapacitating and that in his opinion claimant's greatest incapacity is the nerve injury to the left hand and thumb.

On September 15, 1967, the claimant underwent tests to evaluate his gastrointestinal and respiratory systems. These tests were performed by Dr. Gilbert L. Hamilton at the Appalachian Regional Hospitals, Inc. The gastrointestinal diagnosis was a chronic active duodenal ulcer, non-obstructing. Dr. Hamilton stated in the report that this placed no specific functional limitation on the claimant as far as sitting, standing, walking, stooping, squatting, bending, lifting, climbing stairs, using public transportation, or driving vehicles. The report concluded that the ulcer has had no significant effect on the claimant's nutritional status, and may be healed by proper medical treatment.

The respiratory system diagnosis was chronic obstructive lung disease (chronic bronchitis and emphysema) which Dr. Hamilton placed in Class III according to the Guide to Evaluation of Permanent Impairment of the Respiratory System as published in the Journal of the American Medical Association in November, 1965. This means 40–50% impairment of the whole man. Dr. Hamilton stated in the report that the only functional limitation placed on the claimant is to limit his activity to that which does not produce intolerable dyspnea. Mild dyspnea can be experienced without any significant deleterious effect on the patient. Dr. Hamilton concluded that the musculoskeletal discomforts which the claimant experiences could for the most part be alleviated by physical methods of treatment and perhaps injections.

Based upon these additional examinations, the Appeals Council on January 12, 1968, found that the claimant's impairments do not preclude physical activity requiring light exertion and that such activity is commensurate with his usual

occupation as a farm foreman; that the evidence fails to establish that the claimant's impairments, either singly or in combination, prevented him from engaging in substantial gainful activity at any time prior to the date of their decision; that the claimant is not under a "disability" as defined in the Act.

In reviewing a final decision of the Secretary of Health, Education and Welfare, this court is aware of the substantial evidence rule, which precludes a trial de novo. Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). Neither is it within the province of this court to evaluate and weigh the evidence. If the findings have substantial evidentiary support, notwithstanding the evidence might permit a different conclusion, they are conclusive upon review in this court. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It is more than a scintilla of evidence, but less than a preponderance. If there is substantial evidence to support the Secretary's decision, then our inquiry must end. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966); Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). Considering all the medical evidence, the evidence concerning the claimant's former employment in Oregon, as well as the testimony of the claimant, we cannot say that the Secretary's decision is not supported by substantial evidence of record.

This conclusion is supported by the testimony of Dr. Charles F. Elton, a vocational expert, who testified that the claimant could return to his former job as a supervisor on a berry farm or a similar type of work. The initial burden is on the claimant to establish by credible evidence that he cannot return to his prior work, and when the claimant fails to meet this burden it is not necessary to consider the effect of his condition within the framework of his work history, education and age, Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962) cert. denied 370 U.S. 951 (1962), or for the Secretary to show the general availability of employment for which the claimant is fit and qualified. Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966); Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965). We are aware that claimant's former job was in Oregon. The relevant geographical area where a person might reasonably be expected to market his labor is a difficult question dependent upon the facts of each particular case. Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966). In the present case we have a claimant, who has no dependents, and who for a period of nine to ten years was engaged in agricultural labor in the local economy in Oregon. We have evidence that the claimant is still capable of performing his former job or similar work. Under these circumstances, we do not think it necessary for the Secretary to show the existence of job availability in the Virginia local economy. A claimant cannot remove himself from a local economy where he is employable or has actual job availability and require the Secretary to show employability in the area to which he has moved, once the Secretary has shown that the claimant still possesses the capability to perform his former job. We note that the Appeals Council stated that there are several agricultural enterprises in the area where the claimant now resides which might reasonably hire the claimant considering his transferable experience in farm management.

Accordingly, in view of the record as a whole, we think that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's motion for a summary judgment must be granted.