Patrocinia **MENESES**, Appellant,

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**No. 23970.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1970.

Decided Feb. 19, 1971.
As Amended March 5, 1971.

Tamm, Circuit Judge, dissented and filed opinion.

Mr. Philip Marcus, Wheaton, Md., for appellant.

Mr. Warren L. Miller, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Nathan Dodell, Asst. U. S. Attys., were on the brief, for appellee.

Before WRIGHT, TAMM and LEVEN-THAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This case involves an action brought under § 205(g) of the Social Security Act, as amended,[1] to reverse the decision of the Secretary of H.E.W. that Perfecto Meneses, hereafter plaintiff,[2] was not subject to a "disability" on the critical date and hence was not entitled to disability insurance benefits. On cross-motions for summary judgment, the District Court entered judgment for the Secretary. We reverse.

I. *The Facts*

Plaintiff was born in the Philippines on September 22, 1910. Prior to finishing high school, he served with the United States Army as a Philippine Scout from 1938 to 1947, the source of his employment coverage for Social Security purposes.[3] On May 20, 1947, he suf-

---

1. 42 U.S.C. § 405(g) (1964).

2. The original appellant, Perfecto Meneses, died in August, 1968. His widow, Patrocinia Meneses was substituted as plaintiff per order of the District Court on May 22, 1969. In this opinion, decedent Perfecto Meneses will be referred to as "plaintiff."

3. Sections 217(a) of the Act, 42 U.S.C. § 417(a), and 217(e), 42 U.S.C. § 417(e) grant wage credits for active service (including service deemed active service) to World War II veterans and to veterans of post-World War II service. The Social Security Administration Regulations, 20 C.F.R. §§ 404.1304(a) (3) and 404.-1305(a) (3) (1970) include members of the Philippine Scouts as covered veterans for establishment of a period of disability under the Act.

fered a heart attack. His condition was diagnosed as myocardial infarction due to coronary occlusion. He was hospitalized until October 22, 1947, when he was honorably discharged as unfit for military service because of a finding by a Board of Medical Officers that he was "[i]ncapacitated for further duty because of possibility of subsequent cardiac damage on strenuous activity." He never fully recovered from his weakened heart condition; in fact, his death in 1968 was caused by a heart attack. However, the relevant period of disablement under the insured status requirements of the Social Security Act, 42 U.S.C. § 423(c)(1) is the period before either June 30 or September 30, 1950, the last date of plaintiff's insured status.[4] He was examined by the Veterans' Administration in October, 1948, and September, 1951, for rating purposes. The electrocardiographic report at the latter examination noted that his clinical record was "[d]efinitely * * * abnormal." The VA rating board rated his disability "100% from 10-23-47 to 4-22-48" and "60% from 4-23-48 to 2-3-52." The record also indicates a subsequent rating of 30% until 8-14-55, when it was increased to 60%; it went to 100% in 1958.[5]

After his military discharge, plaintiff took a radio technician course for ten months in 1951–52, and he worked as a strawberry picker and assistant bartender briefly in 1955. He had to quit both jobs because of his heart weakness.

## II. *Governing Principles*

The Social Security Act, as amended, provides that "Every individual who * * * is insured for disability insurance benefits * * * and * * * is under a disability * * * shall be entitled to a disability insurance benefit." [6] "Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable 'physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." In addition,

> an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[7]

4. The hearing examiner in this case stated that plaintiff's insured status ended on June 30, 1950. The Social Security Administration had earlier determined this date to be September 30, 1950. The difference is not significant to the case however.

5. In 1955 the V.A. rating of appellant was Class III—50 to 70% impairment. Class III is shown where "(a) organic heart disease exists but without resulting symptoms at rest; (b) walking more than one or two blocks on the level, climbing one flight of ordinary stairs, or the perform-

ance of the usual activities of daily living produce symptoms; (c) emotional stress, hurrying, hill-climbing, recreation, or similar activities produce symptoms; and (d) signs of congestive heart failure, if present, are usually relieved by therapy." Sagall and Reed, The Heart and The Law, 810 (1968).

6. 42 U.S.C. § 423(a) (1) (Supp. V, 1965–69).

7. 42 U.S.C. § 423(d) (1) (A), and (d) (2) (A) (Supp. V, 1965–69).

■ We reverse because the claimant showed inability to resume his former work and the Secretary failed to meet the burden, which then devolved on him, of introducing evidence of "substantial gainful work that exists in the national economy" for a person of appellant's "age, education, and work experience" and suffering from his sort of physical impairments.

The Government claims that the Secretary has no burden whatever of offering evidence of job availability for disability claimants. We think such a burden of coming forward does shift to the Government when the claimant has made a showing of inability to return to his former work, and the record does not otherwise contain any evidence of claimant's ability to engage in substantial gainful work. If the Government meets its burden of coming forward, then the claimant has the overall burden of showing that his disability precludes substantial gainful work.

The Government bases its argument on the effect on prior law of § 158(b) of the Social Security Amendments of 1967.[8] It is clear, of course, that the 1967 amendments were designed to tighten the definition of disability in light of court decisions interpreting the prior statutory language which had "put the burden of proof on the Government to identify jobs for which the individual might have a reasonable opportunity to be hired, rather than ascertaining whether jobs exist in the national economy which he can do." Congress amended the disability section so that "[W]hether he would or would not actually be hired * * * may not be used as a basis for finding an individual to be disabled under this definition."[9] Such a show-ing may no longer be required. Gentile v. Finch, 423 F.2d 244, 246 (3d Cir. 1970).

■ Nevertheless, the 1967 Amendments have not jettisoned the rule that once the claimant shows evidence of his physical impairment disabling him from his former employment, the Secretary has the burden of going forward with evidence of other available employment. The only change wrought by the 1967 Amendments relates to the kind of evidence that must now be adduced. The Secretary need not show that the claimant would actually be hired. But he must show that there are jobs in the national economy that the claimant can do. In cases arising both before and after the 1967 Amendments it has been clearly stated that claimant's evidence of physical impairment undercutting ability to engage in former employment puts a burden on the Secretary to come forward with evidence of capacity to perform jobs, in accordance with the statutory criterion. The burden of coming forward that is shifted to the Government has most recently been restated in Gray v. Finch, 427 F.2d 336 (6th Cir. 1970), where the claimant, a former foundry worker, presented evidence of lung disease that rendered him unfit to return to foundry work. The court said:

* * * The burden was on appellant to convince the Secretary that he was disabled from engaging in his former employment. He satisfied this requirement, thus shifting to the Secretary the burden of going forward with evidence to demonstrate the existence of available employment compatible with appellant's disability. (427 F.2d at 338)[10]

8. Pub.L.No.90–248, § 158(b), 81 Stat. 868, (now codified in 42 U.S.C. § 423(d) (2) (A), supra n. 7).

9. H.R.Rep.No.544, 90th Cong., 1st Sess. 29–30 (1967) ; S.Rep.No.744, 90th Cong. 1st Sess. 48–49 (1967).

10. It was because a vocational expert testified, producing evidence of several such jobs, and the claimant failed to demon-strate that he could not perform them that the court in Gray affirmed the Secretary's denial of benefits. Once the Government met its burden of going forward by introducing evidence that claimant could do other work, claimant had the overall burden of proof showing that his disability precluded his doing the work.
See also Stumbo v. Gardner, 365 F.2d 275 (6th Cir. 1966) ; Long v. Cohen, 293

The precedents relied on by the Government with regard to the 1967 Amendments are not to the contrary. they either hold that (1) the Secretary does not have to show that the claimant would actually be hired, Gentile v. Finch, 423 F.2d 244 (3d Cir. 1970), Wright v. Gardner, 403 F.2d 646 (7th Cir. 1968); or that (2) when the claimant fails to show that he cannot return to his usual job the burden does not shift to the Secretary, Martin v. Finch, 415 F.2d 793 (5th Cir. 1969). In the other cases cited by the Government there was simply no evidence adduced by claimant of any inability to engage in employment. In Labee v. Cohen, 408 F.2d 998, 1000 (5th Cir. 1969), the evidence showed that "[i]t is the appellant's attitude and not his aptitude which prevents him from engaging in gainful employment." *See also* Ryan v. Secretary of H.E.W., 393 F.2d 340 (9th Cir. 1968). Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963), is not relevant here, because the hearing examiner had the benefit of vocational reports in his finding that the claimant was capable of substantial gainful activity. *Cf.* Breaux v. Finch, 421 F.2d 687, 689 (5th Cir. 1970), where claimant was only 20% disabled and "perfectly capable of engaging in an infinite variety of jobs which can be classified as light work."

In Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962), Mrs. Gotshaw could have continued doing the same work she had done for years if her employer had not installed a heavier spinning machine.

It was also found "quite significant" that she made no effort to find other employment.

As to prior decisions of our court, the Government invokes Mitchell v. Gardner, 123 U.S.App.D.C. 195, 198, 358 F.2d 826, 829 (1966). There we rejected the claim of an epileptic, saying: "there would appear to be no reason why, with continuing medication, he could not return to his former work when he is released." Today we focus on the rule that establishes the Government's burden of going forward once the claimant has shown a medical impairment which prevents him from returning to his former type of work. A host of precedents attest to the vitality of that rule.[11]

These cases make clear that the 1967 Amendments lighten the burden of what the Government must show, but claimant's showing of inability to return to former work does shift to the Government a burden of coming forward. Now the Secretary need only come forward with proof that there are substantial job opportunities in the national economy that can be occupied by persons of the claimant's background and condition. As already indicated, once the Secretary comes forward with such proof claimant must shoulder the overall burden of showing, *i. e.*, convincing the Secretary, that the disability precludes any gainful employment.

Finally, we refer to the Government's claim based on the putative effect of Section 223(d) (5) of the Act, 42 U.S.C. § 423(d) (5) (Supp. V 1965–69), included

F.Supp. 370, 375 (W.D.Va.1968); Waters v. Gardner, 283 F.Supp. 750, 753 (E.D. Wis.1968). The same ruling is impliedly accepted in Gray v. Secretary of H.E.W., 421 F.2d 638, 639 (5th Cir. 1970) ("Since the hearing examiner concluded that Gray could return to his *former occupation*, vocational testimony was not necessary." (emphasis in original)). *But see* Miller v. Finch, 430 F.2d 321, 324 (8th Cir. 1970).

11. *See, e. g.*, Reyes Robles v. Finch, 409 F.2d 84, 86 (1st Cir. 1969); Mullins v. Cohen, 408 F.2d 39, 40 (6th Cir. 1969);

Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968); Rosin v. Secretary of H.E.W., 379 F.2d 189, 195 (9th Cir. 1967); Mc-Millin v. Gardner, 384 F.2d 596, 598 (10th Cir. 1967); Galan Aguila v. Secretary of H.E.W., 308 F.Supp. 42, 45 (D.Puerto Rico 1970); Haskins v. Finch, 307 F. Supp. 1272, 1283 (W.D.Mo.1969); Weaver v. Finch, 306 F.Supp. 1185, 1191 (W. D.Mo.1969); Boback v. Finch, 304 F. Supp. 966, 969 (W.D.Pa.1969); Trujillo v. Cohen, 304 F.Supp. 265, 267–268 (D. Colo.1969). *See* Annot. 22 A.L.R.3d 440 (1968) and 1970 Supp. for an exhaustive collection of other cases.

in the 1967 Amendments, which reads as follows:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.

However, a similar sentence, containing the word "proof" instead of the current "medical and other evidence," was a part of former § 223(c) (2), 42 U.S.C.A. § 423(c) (2) (1964). Neither sentence is inconsistent with the requirement that after an initial showing by claimant, the Government has the burden of coming forward with vocational evidence.[12]

The legislative history of (d) (5) is unenlightening, the Senate Report merely repeating the statutory language.[13] No pertinent requirement concerning the furnishing of evidence of disability appears in any order or regulation issued under subsection (d) (5) that has been called to our attention. Substantially the same language was part of the former *disability definition* under which the rule shifting the burden of going forward was established. *See* Kerner v. Flemming, 283 F.2d 916, 921–922 (2nd Cir. 1960), where, considering the effect of former subsection (c) (2), the court said, "However, it does not follow that the court is bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer."

## III. *Application of Principles to the Record*

The case before us is unique in terms of the facts and state of the record. Plaintiff was a resident of the Philippines. When he inquired about a hearing on his claim he was informed by an H.E.W. official that "since no provision has been made for hearings to be held outside the United States, you would have to come into the United States at your own expense. * * *" (Tr. 98).[14] He could not afford such a journey, so we do not have the kind of record often available in such cases.

This case is unique also in that plaintiff's former employment was with the Army, rather than any of the almost infinite variety of civilian employments usually involved in benefit cases. Congress provided that service in the Army during and after World War II gave rise to Social Security benefits.[15] Plaintiff went into the Army as a Philippine Scout before finishing high school and stayed in until his 1947 heart attack. On his Discharge Certificate, the Board of Medical Officers found that his heart disease was "aggravated by active service" and deemed him to be "[i]ncapacitated for further duty." This is a sufficient showing of inability to return to former employment to shift to the Secretary the burden of coming forward with evidence that plaintiff's condition left him gainfully employable.

---

12. The question was noted, without decision, in Gentile v. Finch, *supra*, 423 F.2d at 248 n. 5; Flake v. Gardner, 399 F.2d 532, 541 (9th Cir. 1968); and Dean v. Gardner, 393 F.2d 327, 329 (9th Cir. 1968).

13. S.Rep.No.744, 90th Cong., 1st Sess. 49 (1967).

14. In view of our disposition of this case, we need not consider whether this was a correct statement. The Government's brief on appeal argues that a hearing was available in the Philippines at the Veterans' Administration Regional Office. *See* 20 C.F.R. § 404.918 (1970). At oral argument counsel for appellant stated, without contradiction, that he had been orally advised by Government counsel that the Social Security Administration did not provide hearings in the Philippines. We also need not consider appellant's further claims of procedural unfairness which assertedly vitiate the Secretary's determination.

15. *See* note 2, *supra*. "World War II" and "post-World War II" are defined in the Regulations, 20 C.F.R. §§ 404.1302, 404.1303, as a period running from September 16, 1940, to the close of December 31, 1956.

■ The Hearing Examiner referred to plaintiff's training, in 1951–52, as a radio technician at Feati University, concluding that plaintiff "presumably could have performed the tasks of a radio technician since it is common knowledge that this is light work performed at a bench where one can work seated." Assuming that it is common knowledge that there are jobs available in the national economy for high school graduates with radio technology credits, we do not think it is subject to judicial notice, and the record is devoid of evidence on whether or to what extent there are significant numbers of jobs in the national economy which could be filled by a person with plaintiff's limited training and suffering from his sort of Class III heart condition. The record shows he was the kind of person who was at least willing to try his hand at jobs that in the event proved too much for his physical condition. One of these, bartending, would not seem to involve "strenuous" activity, but it was beyond his powers at a time when he was designated at Class III.

■ No evidence whatever was adduced by the Secretary, neither testimony of a vocational expert such as he often provides, nor deposition or interrogatories. Since the Secretary had the burden of coming forward on this point, his failure to adduce evidence leaves his findings without the support of substantial evidence as required by 42 U.S.C. § 405(g). *Cf.* Mitchell v. Gardner, 123 U.S.App.D.C. 195, 197–198, 358 F.2d 826, 828–829 (1966). Accordingly, we reverse and remand for entry of a judgment directing that plaintiff be granted the disability insurance benefits to which he would have been entitled had his application been approved, and to which he was entitled on the record as made.

So ordered.

TAMM, Circuit Judge (dissenting):

The burden of establishing a disability claim under the Social Security Act has always been on the claimant. He must show an "inability to engage in *any* sub-stantial gainful activity." 42 U.S.C. § 423(d) (1) (A) (Supp. IV, 1965–68) (Emphasis added.) This means an inability to engage not only in one's former occupation, but also in some other gainful activity. The majority reverses the decision of the Secretary because they claim that once the appellant has shown that he is no longer able to engage in merely his former employment there is a "burden on the Secretary to come forward with evidence of capacity to perform jobs." Unfortunately, the majority has grossly misinterpreted and misapplied the law on this subject. The claimant must show more than a mere inability to pursue his former employment to make out a case.

In Alsobrooks v. Gardner, 357 F.2d 110 (5th Cir. 1966) it was stated:

To establish a disability under the Act *a claimant must show* that he is unable to do his former work *and* is unable to perform any substantial, gainful work, including work of a lighter type. (Citations omitted.)

(*Id.* at 112) (Emphasis added.) It was held in Harrington v. Gardner, 262 F. Supp. 288 (S.D.N.Y.1966):

This burden is satisfactorily met when [claimant] offers evidence of such incapacity that he is no longer capable of meeting the demands of his prior employment *and that his background,* as a practical matter, apparently precludes him from securing other employment.

(*Id.* at 291) (Emphasis added.) In Celebrezze v. Raley, 330 F.2d 755 (5th Cir. 1964), with Judge Wright on the panel, the court in a per curiam opinion in quoting from Hicks v. Flemming, 302 F.2d 470 (5th Cir. 1962) stated the rule as follows:

"To establish a disability under [the Act] a claimant must *do more than show that he is unable to do his former work*; he must be unable to perform any substantial, gainful work, including work of a physically or emotionally lighter type. * * *"

Celebrezze v. Raley, *supra*, 330 F.2d at 757. (Emphasis added.) A claimant is required to be unable to do the type of work that he was formerly engaged in *and demonstrate* his lack of particular experience for any other type of work. *See* Rosin v. Secretary of HEW, 379 F.2d 189 (9th Cir. 1967).

To support its interpretation of the rule on burden of coming forward, the majority has cited many cases. In most of the cases the claimant has either initially *demonstrated*, besides a physical handicap, his *lack of particular experience* or *educational background* for another job, *see, e. g.*, Mullins v. Cohen, 408 F.2d 39 (6th Cir. 1969); Long v. Cohen, 293 F.Supp. 370 (W.D.Va.1968) [1], or has failed even to establish incapacity to return to his former work, thus rendering a discussion of the matter unnecessary. *See, e. g.*, Stumbo v. Gardner, 365 F.2d 275 (6th Cir. 1966). In the other cases cited the courts were more concerned with the Secretary showing that claimant would actually be hired. *See, e. g.*, Rosin v. Secretary of HEW, *supra*. This, of course, is no longer a requirement under the amendments.

Typical of the cases cited by the majority is Stumbo v. Gardner, *supra*. In this case the claimant failed to even establish that she was disabled from returning to her former employment. The court then was not even faced with the issue of whether the Secretary would have been compelled to go forward if .the claimant had shown *only* an inability to return to her former employment. Though *Stumbo* may have implied the majority's interpretation of the rule, a careful study of the cases relied on by the *Stumbo* court shows the majority interpretation to be incorrect. *Stumbo* and other cases from other circuits that supposedly support the majority position can be found to ultimately rely on Thompson v. Celebrezze, 334 F.2d 412 (6th Cir. 1964) and Ellerman v. Flem-

ming, 188 F.Supp. 521 (W.D.Mo.1960) for their statement of the law. In *Thompson* the claimant "proved his *total* disability." Thompson v. Celebrezze, *supra*, 334 F.2d at 414. (Emphasis added.) The court then stated:

> [H]e *need* only *establish that* he has become disabled from employment in *any work* in which he could profitably seek employment, in the light of his *physical* and *mental* capacities and his education, training and experience; and he need not be totally helpless or bedridden.

(*Id.*) (Emphasis added.) In *Thompson* it was *only* because the claimant had established that he could not read, had very little movement of his back and was unable to even do some types of light work that the burden shifted to the Secretary. In *Ellerman* the claimant made his case when he showed his lack of training and experience for anything other than physical labor. In neither *Thompson* nor *Ellerman* did the court hold that the initial burden was met by *merely* showing an inability to engage in former employment. In Justice v. Gardner, 360 F.2d 998 (6th Cir. 1966) the court dispelled any notion that its past decisions gave vitality to a rule the majority now states as being supported by a "host of precedents." The court in *Justice*, assuming claimant's inability to do *only his prior work*, stated:

> Our relevant decisions have been made in the *factual contexts of each case* and we *did not announce a mechanical rule* which would relieve each applicant from *his initial burden* of proving disability. It is not the burden of the Secretary to make an initial showing of non-disability.

(*Id.* at 1002) (Emphasis added.) In Gray v. Finch, 427 F.2d 336 (6th Cir. 1970), which is quoted by the majority, it was stated that "the claimant must show that he is suffering from a medical disability which prevents him not only

---

1. In *Mullins* and *Long* appellants could neither read nor write. This is particularly relevant, since in our case claimant has had a high school education and a year of training in radio technology at Feati University.

from performing his previous work, but also from obtaining any gainful employment." (*Id.* at 337.)

It is quite evident from the record in this case that the claimant has utterly failed to meet his burden. All that we know of claimant's physical condition prior to June or September of 1950, when his insured status terminated, is that he was given a disability discharge from the Army because of a finding by a Board of Medical Officers that he was "[i]ncapacitated for further duty because of *possibility* of subsequent cardiac damage on *strenuous* activity." (Tr. 25) (Emphasis added.) Though the status of claimant's health after 1950 is irrelevant, it is interesting to note that he was at all times since April 23, 1948, cleared to perform moderate activity. The majority, however, seems to take great comfort in relating the claimant's physical condition some five years after his insured status had expired. If this type of evidence were proper food for thought, though I don't concede it as such,[2] it would be quite a bit more helpful to consider what claimant did only *one* year after his insured status expired. At that time the claimant was in good enough health to start and then successfully complete a full year's load of university courses. Claimant offered no evidence, medical or otherwise to show that by his lack of education, experience or good health that he was unable to perform any other substantial activity. The record indicates that claimant was a high school graduate and spent a year at Feati University taking courses in radio technology,[3] a trade that hardly requires "strenuous activity."

It is contrary to logic and prior case law to hold that a claimant, with the educational background of our claimant, has met his burden by merely establishing

an incapacity any longer to serve in the Army. It is indeed quite conceivable that while in the Army claimant might well have had duties that required a certain degree of skill and responsibility that would have put him in good stead for transition to the civilian way of life. He had achieved the rank of staff sergeant and was described as intelligent. (Tr. 26.) Claimant could have provided the Secretary with information about his particular job experience or lack thereof in his application for disability. He failed to do so by leaving unanswered question 9 of the disability form which reads:

> What kind of job did you work at most in the 3 years before the date [of your impairment] (give job title, nature of employer's business, *brief description of your duties)*?

(Tr. 16) (Emphasis added.) Neither are we told of plaintiff's activities in relation to job experience prior to 1938 when he became a Philippine Scout. It is the duty of the claimant to provide this information in order to show his lack of qualification for any other line of work. Not until this is done can it be said there is any burden on the Secretary. To borrow a phrase from Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962), I too, find it "quite significant" that claimant does not allege that he made any effort to look for another job prior to 1955.

Even if I were to hold that the burden had shifted to the Secretary, the record would still support his ruling. It is obvious that claimant's educational background would qualify him for the thousands of light jobs that exist in the community. It would be absurd to require vocational evidence to prove the obvious —that jobs not requiring strenuous ac-

---

2. *See* Johnson v. Celebrezze, 217 F.Supp. 741 (S.D.W.Va.1963).

3. Despite claimant's academic achievements the majority refers to his training as "limited." No such classification is justified. In 1950–51 only 11 percent of the total school population in the Philippines was enrolled in high school and 3.5 percent in college. *See* 15 Collier's Encyclopedia 660 (1955). Claimant, who actually *finished* high school and spent a year in college, was certainly a member of a select minority group.

tivity are available in the national community for high school graduates with additional credits in radio technology. Breaux v. Finch, 421 F.2d 687 (5th Cir. 1970). If we are to assume that it is common knowledge that such jobs are available for people possessing claimant's educational background, then it is a proper subject for judicial notice. See Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200 (1875); Burr v. NLRB, 321 F.2d 612 (5th Cir. 1963); Mills v. Denver Tramway Corp., 155 F.2d 808 (10th Cir. 1946); Lowe v. United States, 83 F. Supp. 128 (W.D.Mo.1949). "Courts need not be blind to what all others know." Burr v. NLRB, *supra,* 321 F.2d at 624. Such things as economic and business conditions have often been subject to judicial notice. Antonio Roig Sucrs. S. En C. v. Sugar Bd. of Puerto Rico, 235 F.2d 347 (1st Cir. 1956), cert. denied, 352 U.S. 928, 77 S.Ct. 225, 1 L.Ed.2d 162 (1956); Barlow v. Budge, 127 F.2d 440 (8th Cir. 1942), cert. denied, 317 U.S. 647, 63 S.Ct. 42, 87 L.Ed. 521 (1942); Superior Trucking Co. v. United States, 274 F.Supp. 196 (N.D.Ga. 1967); In re Chaney, 76 F.Supp. 911 (W.D.Va.1947), aff'd *sub nom.* Chaney v. Stover, 167 F.2d 471 (4th Cir. 1948); Gualtieri v. Sperry Gyroscope Co., 67 F. Supp. 219 (E.D.N.Y.1946).

Unless we are to adopt a practice of abandoning reason and of interpreting cases beyond their intended scope, this case should be affirmed. I agree wholeheartedly with the majority that "the court is [not] bound to sustain a denial of disability benefits where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." It is obvious to me, however, from a painstaking examination of the record that the applicant has not raised a "serious question" and that there is a more than "sufficient basis" for the Secretary's holding.